THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THERESA BRADBURY,<br><br>                    Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN,<br>*Acting Commissioner of Social Security*<br><br>                    Defendant. | CASE NO. C13-5146-JCC<br><br>ORDER ADOPTING REPORT AND<br>RECOMMENDATION |

     This matter comes before the Court on Plaintiff Theresa Bradbury's objections (Dkt.

No.25) to the Report and Recommendation of the Honorary Mary Alice Theiler, United States

Magistrate Judge, which recommends affirming the Social Security Commissioner's denial of

benefits (Dkt. No. 22). Having thoroughly considered the Report and Recommendation,

Plaintiff's objections thereto, the Commissioner's response, and the relevant record, the Court

rejects Plaintiff's objections and ADOPTS the Report and Recommendation. (Dkt. No. 22.)

I.     **BACKGROUND**

     Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security

Income on February 10, 2010, alleging a disability onset date of August 10, 2009. Her

applications were denied at the initial level and on reconsideration. Following a hearing on

January 17, 2012, the administrative law judge ("ALJ") found Plaintiff not disabled and denied

benefits. The Appeals Council thereafter denied Plaintiff's request for review, making the ALJ's

1  decision the final decision of the Commissioner. (*See* Dkt. No. 22 at 2.)

2       Plaintiff sought review of the Commissioner's decision in this Court. In a report

3  submitted to the undersigned, Judge Theiler recommends affirming the decision of the ALJ.

4  (Dkt. No. 22.) Plaintiff timely submitted objections to Judge Theiler's Report and

5  Recommendation ("R&R"). (Dkt. No. 25.)

6  **II.**    **<u>DISCUSSION</u>**

7       The Court reviews *de novo* those portions of the R&R to which Plaintiff has properly

8  objected. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3). In her objections, Plaintiff

9  primarily reiterates the arguments made before Judge Theiler. Specifically, Plaintiff argues that

10  contrary to Judge Theiler's conclusions, the ALJ: (1) improperly evaluated the opinion of Dr.

11  Trudy Iredale and accordingly erred in setting Plaintiff's RFC; (2) erred in concluding at step

12  three that Plaintiff's impairment did not meet or equal Listing 12.02; (3) improperly evaluated

13  Dr. Gary Gaffield's opinion that Plaintiff should be limited to no more than six hours of standing

14  or walking in an eight-hour day and should avoid stairs; and (4) impermissibly rejected

15  Plaintiff's testimony that she has trouble tracking a two-hour movie. (*See* Dkt. No. 25.)

16       The ALJ's denial of benefits will be disturbed only if it is not supported by substantial

17  evidence or if it is based on legal error. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).

18  "Substantial evidence means more than a mere scintilla but less than a preponderance. It means

19  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

20  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotations omitted). "Where

21  the evidence is susceptible to more than one rational interpretation, one of which supports the

22  ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954

23  (9th Cir. 2002). The Court addresses each of Plaintiff's objections in turn.

24       **A.**    **Consideration of Dr. Iredale's Opinion**

25       Plaintiff first argues that the ALJ failed to properly assess Dr. Iredale's opinion in setting

26  her RFC. (Dkt. No. 25 at 2.) Upon review, the Court finds this objection to be without merit.

ORDER ADOPTING REPORT AND
RECOMMENDATION
PAGE - 2

1    The ALJ concluded that Plaintiff was "limited to unskilled and some semi-skilled work."

2 (Dkt. No. 12 at 30.) This determination was based in part on Dr. Iredale's opinion, which Judge

3 Theiler described as follows:

> Plaintiff was referred to Dr. Iredale by the state Division of Disability Services on
> May 26, 2010 for an "Adult Memory Assessment." [(Dkt. No. 12 at 341–46.)] Dr.
> Iredale administered the Trail Making Test (TMT), which measures "an individual's
> attention, sequencing, mental flexibility, and visual search abilities." ([*Id*. at] 343.)
> Plaintiff scored in the Inferior range of functioning, suggesting "the possibility of
> neurological impairment." (*Id*.) Dr. Iredale also administered the Wechsler Memory
> Scale (WMS-III), where plaintiff performed in the Extremely Low to Low Average
> range of functioning, although the test showed Working Memory as a relative
> strength. ([*Id.* at] 344.) Dr. Iredale indicated that plaintiff's memory abilities "fall in
> the range of Extremely Low" and were unlikely to improve with time. ([*Id.* at] 345–
> 46.) Dr. Iredale suggested that a representative payee be assigned. ([*Id.* at] 346.) Dr.
> Iredale concluded the assessment by opining: "She is cognitively capable of
> following simple instructions but will have increasing difficulty as the complexity of
> the task increases. Judgment and insight are good. She has good social skills. She has
> extremely poor memory skills." (*Id*.)

13 (Dkt. No. 22 at 5.)

14 In forming Plaintiff's RFC, the ALJ specifically relied upon Dr. Iredale's conclusion "that

15 claimant can follow simple instructions, but would have increasing difficulty as the complexity

16 of the task increases." (*Id.* at 29.) The ALJ gave Dr. Iredale's opinion great weight because it

17 was "consistent with the evidence of record." (*Id*. at 29–30.) Judge Theiler upheld the ALJ's

18 determination because Plaintiff failed to show that the interpretation was unreasonable. (Dkt. No.

19 22 at 5–7.)

20    Plaintiff now argues that Judge Theiler "finds [the following] important areas of Dr.

21 Iredale's opinion to be insignificant: the extremely low memory scores, many below the first

22 percentile, and the GAF score of 43, indicating serious impairment in social and occupational

23 functioning." (Dkt. No 25 at 1.) Plaintiff asserts that "[w]ith [memory] scores this remarkably

24 low, . . . performing simple instructions would not be the problem, but remembering instructions

25 and what to do throughout the day would be." (*Id.* at 2.) Plaintiff also alleges that her low Global

26 Assessment of Functioning (GAF) score of 43 indicates "globally serious impairment in social

ORDER ADOPTING REPORT AND
RECOMMENDATION
PAGE - 3

1  and occupational functioning." (*Id.*) Additionally, Plaintiff highlights Dr. Iredale's narrative

2  report which states Plaintiff's "memory abilities are unlikely to improve with time" and her

3  memory deficits "suggest[] it may be prudent to assign a payee at this time." (*Id.* at 3.) In sum,

4  Plaintiff argues that her low memory scores and low GAF score, considered in light of the

5  narrative report, show that "Dr. Iredale's findings were not supportive of the RFC, which was set

6  for unskilled and semi-skilled work." (*Id.*)

7       Plaintiff's argument fails. The question is whether the ALJ's determination was based on

8  substantial evidence—that is, whether a reasonable mind would accept the determination as

9  adequately supported. "Where evidence is susceptible to more than one rational interpretation, it

10  is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

11  2005). Here, the ALJ and Judge Theiler each discussed the very facts upon which Plaintiff now

12  bases her argument, but came to a separate answer—one which this Court finds to be reasonable.

13  (*See* Dkt. No. 22 at 6–7.) Specifically, while noting Plaintiff's low GAF score and recognizing

14  that it is a "rough estimate" of an individual's psychological, social, and occupational

15  functioning," *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998), the ALJ appropriately

16  declined to base Plaintiff's RFC only on the GAF score and "extremely low" WMS-III scores,

17  instead considering it "in light of the narrative report[,] the medical evidence[,]" and Dr.

18  Iredale's ultimate conclusion.[1] (Dkt. No. 22 at 6 (citing AR 27 n.1).)

19       Ultimately, Judge Theiler properly concluded that "there is nothing in Dr. Iredale's report

20  stating plaintiff was unable to work at any job." (*Id.*) Rather, "[t]he ALJ took into account Dr.

21  Iredale's assessment of plaintiff's mental impairments by limiting her to unskilled and some

22  semiskilled work." (*Id.*) Because "Plaintiff has not shown that the ALJ's conclusion was

23  unreasonable" (Dkt. No. 22 at 7), the Court overrules her objection.

24  _____

25       [1] Notwithstanding Plaintiff's arguments, a GAF score is opinion evidence, the consideration of which
depends on whether it is consistent with other evidence, among other factors. Administrative Message AM-13066

26  (July 22, 2013).

ORDER ADOPTING REPORT AND
RECOMMENDATION
PAGE - 4

1       **B.**      **The ALJ's Step-Three Determination**

2       Plaintiff also challenges the ALJ's step-three determination that she did not have an

3 impairment which meets or medically equals the severity of one of the listed impairments in 20

4 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 4–6.) This argument has two components. First,

5 Plaintiff asserts that the ALJ's determination that Plaintiff only has "moderate" difficulties in

6 maintaining concentration, persistence, or pace is unreasonable in light of Dr. Iredale's medical

7 assessment. (*See id.* at 5; Dkt. No. 17 at 5–6.) Second, Plaintiff argues that the ALJ failed to

8 adequately consider whether Plaintiff's "extreme" memory deficits were equal in severity to

9 requirements in part B of Listing 12.02, "Organic Mental Disorders." (Dkt. No. 25 at 4–6.)

10 Because Plaintiff's second contention depends on the first, and the Court agrees with Judge

11 Theiler that "the ALJ did not err in the assessment of [P]laintiff's concentration, persistence, or

12 pace limitations as 'moderate,'" the Court affirms the ALJ's step-three conclusion.

13       At step three of a disability determination, the ALJ examines whether a claimant has "an

14 impairment(s) which meets the duration requirement and is listed in Appendix 1 or is equal to a

15 listed impairment." 20 CFR § 404.1520(a)(4)(iii). Listing 12.02 for "Organic Mental Disorders"

16 requires a claimant to meet part A *and* part B or C. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.02.

17 Part A requires a claimant show "a demonstrable loss of cognitive ability, such as memory loss."

18 *Id.* Part B requires an impairment cause "at least two" of the following: a marked restriction of

19 activities of daily living; marked difficulties in maintaining social functioning; marked

20 difficulties in maintaining concentration, persistence, or pace; or repeated episodes of

21 decompensation, each of extended duration. *Id.* As is relevant here, "[c]oncentration, persistence

22 or pace refers to the ability to sustain focused attention and concentration sufficiently long to

23 permit the timely and appropriate completion of tasks commonly found in work settings." 20

24 C.F.R. pt. 404, subpt. P, app. 1, 12.00(C)(3). Deficiencies may be found through a mental status

25 exam, in which "concentration is assessed through tasks requiring short-term memory or through

26 tasks that must be completed within established time limits." *Id.*

1    The ALJ found that Plaintiff failed to show that her mental impairment met or equaled at

2  least two of the part B requirements. (Dkt. 12 at 22.) The ALJ determined that Plaintiff only had

3  "mild" restrictions of daily activities, "mild" difficulties in social functioning, "moderate"

4  difficulties in maintaining concentration, persistence, or pace, and "no episodes of

5  decompensation." (*Id.* at 22–23.) In her objections, Plaintiff argues that the assessment of Dr.

6  Iredale shows she has "an 'extreme' limitation in concentration, persistence and pace, as

7  established by the Trail Making Test and memory testing . . . . [including] many memory scores

8  below the first percentile." (Dkt. No. 27 at 4.) Thus, Plaintiff intimates, the ALJ's finding that

9  Plaintiff suffers only "moderate" issues with Plaintiff's concentration, persistence, or pace issues

10  was unreasonable and does not reflect the opinion of Dr. Iredale. (*See* Dkt. No. 25 at 5.)

11    Plaintiff confuses part A and part B analysis. In Part A, the ALJ considers whether or not

12  a claimant is impaired while in Part B, the ALJ considers how that impairment affects their

13  ability to perform in society. *See* 20 CFR § 404.1520a(b) (noting part A is an inquiry into

14  "whether you have a medically determinable mental impairment" while part B "rate[s] the

15  degree of your functional limitation based on the extent to which your impairment(s) interferes

16  with your ability to function independently, appropriately, effectively, and on a sustained basis").

17  While "extreme" memory issues would likely cause some sort of functional limitation, that level

18  may vary depending on how these issues manifest.

19    Dr. Iredale's assessment clearly demonstrates that the Plaintiff has substantial memory

20  problems. However, the ALJ highlighted the multiple portions of Dr. Iredale's report which

21  support a conclusion that Plaintiff suffers only moderate issues with concentration, persistence,

22  or pace, as he was required to do under *Marcia v. v. Sullivan*, 900 F.2d 172 (9th Cir. 1990)

23  (requiring ALJ to explain evaluation of alternative tests and effects of impairments). Specifically,

24  he noted that "[u]pon mental status examination, the claimant recalled three objects immediately

25  and all three of the objects after a five-minute delay. She repeated the phrase, 'no ifs, ands, or

26  buts' exactly as stated. She performed a three-stage command. She performed serial sevens

ORDER ADOPTING REPORT AND
RECOMMENDATION
PAGE - 6

1    incorrectly. She spelled 'world' correctly forward and backward." (Dkt. No. 12 at 23 (internal

2    citations omitted).) The ALJ also noted other evidence in the record to support his finding,

3    pointing to Plaintiff's own statements that she "needs no special reminders to take care of

4    personal needs or grooming. She is able to pay bills, count change, handle a savings account, and

5    use a checkbook. She watches televisions. She reads. She needs no reminders to go places." (*Id.*

6    (internal citations omitted).)

7         In light of these findings, the ALJ's determination that Plaintiff suffers "moderate"

8    difficulties in regards to concentration, persistence, or pace was reasonable. Other courts have

9    upheld a finding of moderate difficulties maintaining concentration, persistence, and pace based

10   on similar facts. *See Parks v. Comm'r of Soc. Sec.*, 401 Fed. Appx. 651, 655 (3d Cir. 2010)

11   (unpublished decision) (affirming ALJ's determination of moderate difficulties based on

12   claimant's testimony that he had the ability to read, watch television, and play video games).[2]

13   Accordingly, the Court affirms the ALJ's determination. Given that the ALJ's determination that

14   Plaintiff only has moderate issues with concentration is reasonable, Plaintiff's second

15   argument—that the ALJ failed to consider whether "[e]xtreme deficits in concentration,

16   persistence or pace are equivalent to the 'inability to perform gainful activity'" (Dkt. No. 27 at

17   4)—is moot.

18        **B.    Consideration of Dr. Gaffield's Opinion**

19        Plaintiff next argues that in setting her RFC, the ALJ improperly disregarded Dr.

20

21

22   _____

     [2] Numerous other portions of Dr. Iredale's report, though not cited by the ALJ, also support a finding that the effects of Plaintiff's memory issues are not severe. Plaintiff "is cognitively capable of following simple instructions but will have difficulty as the complexity of the task increases." (Dkt No. 12 at 346.) *See* 20 C.F.R. pt.

23   404, subpt. P, app. 1, 12.00(C)(3) ("Deficiencies that are apparent only in performing complex procedures or tasks would not satisfy the intent of this paragraph B criterion.") In evaluating the Trail Making Test results, Dr. Iredale

24   notes that while Plaintiff's "pace was slow," her "persistence was average." (Dkt. No. 12 at 343.) And though Plaintiff scored "Extremely Low to Low Average" on the WMS-III, Plaintiff had a "relative strength in Working

25   memory." (*Id.* at 344–45.) Dr. Iredale's also states that the Plaintiff "pays her own bills monthly and has no difficulty. Her performance on the mental status examination suggests that she should be able to manage her own

26   funds." (*Id.* at 346.)

1   Gaffield's opinion that she should walk/stand no more than six hours per eight-hour workday and

2   should avoid stairs, ladders, and unprotected surfaces. (Dkt. No. 25 at 6–7.) Upon review, the

3   Court agrees with Judge Theiler that the ALJ's conclusion was reasonable.

4        Dr. Gaffield performed a functional assessment examination of Plaintiff on October 16,

5   2010. (Dkt. No. 12 at 381.) His assessment stated the following: "Total time standing/walking in an

6   eight-hour workday: Two hours but less than six due to her vertigo . . . . Postural activities: Limited

7   to an occasional activity due to her impaired balance. She would be advised to avoid stairs, ladders,

8   or unprotected surfaces." (*Id.* at 385.) Under "General Findings," Dr. Gaffield noted, "Neurologic,

9   Romberg was positive." (*Id.*) When formulating Plaintiff's RFC, the ALJ declined to fully adopt the

10  first limitation on time standing/walking because it was insufficiently explained. (*Id.* at 29) (noting

11  that "Dr. Gaffield did not sufficiently explain why he thought the claimant could not stand and walk

12  for six of eight hours.") In her R&R, Judge Theiler recommends affirming the ALJ, explaining that

13  "[t]he ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and

14  inadequately supported by clinical findings." (Dkt. No. 22 at 8 (citing *Thomas*, 278 F.3d at 957).)

15       This Court agrees with Judge Theiler. Dr. Gaffield did not articulate a sufficient connection

16  between the positive Romberg test and Plaintiff's vertigo or balance issues. As Judge Theiler pointed

17  out, Dr. Gaffield's assessment of Plaintiff's coordination, station, and gait found that Plaintiff

18  demonstrated no balance problems. (Dkt. No. 22 at 8.) While Dr. Gaffield subsequently stated that

19  the limitation as due to "vertigo," this conclusion was never explained or otherwise linked to the

20  Romberg test results.  In her briefing Plaintiff has drawn a stronger connection between the two, but

21  is forced to go outside of Dr. Gaffield's report to do so. (*See* Dkt. No. 25 at 6.) The Court declines

22  to do the same.

23       As to the second limitation against the use of stairs, Plaintiff argues that the RFC, which

24  states that Plaintiff "should never climb ladders, ropes, or scaffolds," but may "occasionally climb

25  ramps and stairs," does not correspond to Dr. Gaffield's functional assessment. (Dkt. No. 25 at 7.)

26  Dr. Gaffield's medical report stated the following: "Postural activities: Limited to an occasional

1   activity due to her impaired balance. She would be advised to avoid stairs, ladders, or unprotected

2   surfaces." (Dkt. No. 12 at 385.) Plaintiff reads this to mean that "Dr. Gaffield drew a distinction

3   between the occasional postural activities and the preclusion on stairs and unprotected surfaces,

4   stating the two sets of limitations in contrast to one another." (Dkt. No. 25 at 7.) Thus, Plaintiff

5   argues, this suggests that while she may occasionally perform other postural activities, the use of

6   stairs in not in that category and must be avoided. (*See* Dkt. No. 27 at 6.)

7        An alternative reading is available. Dr. Gaffield recommended that Plaintiff limit her

8   "[p]ostural activities" to an "occasional activity due to her impaired balance." The second sentence—

9   "She would be advised to avoid stairs, ladders, and unprotected surfaces"—clarifies two matters.

10  First, it defines what constitutes "postural activities." Second, it specifies that while Dr. Gaffield's

11  opinion permits an "occasional activity," he nevertheless generally "advise[s]" to avoid the activity.

12  By discussing avoidance in the context of an occasional activity, the ALJ reasonably concluded that

13  Plaintiff may "occasionally climb ramps and stairs." This reading also has the benefit of consistency

14  with other evidence in the record. Dr. Alnoor Virji, a state agency physical consultant, completed a

15  physical residual functional capacity assessment on October 26, 2010. (Dkt. 12 at 387.) Upon

16  reviewing her medical records, including the physical consultative evaluation by Dr. Gaffield, Dr.

17  Virji noted that Plaintiff may "[o]ccasionally" climb "ramps/stairs" but may "[n]ever" climb

18  "ladder[s]/rope[s]/scaffold[s]." (*Id.* at 389.) Because the "ALJ's RFC assessment can reasonably be

19  interpreted as consistent with Dr. Gaffield's assessment[,]" the Court must affirms the ALJ's RFC

20  determination. *Burch*, 400 F.3d at 679.

21       **C.      Credibility**

22       Finally, Plaintiff objects to the ALJ's credibility findings and his discounting of

23  Plaintiff's testimony regarding her memory lapses and inability to track a two-hour movie. (Dkt.

24  No. 25 at 8.) The Plaintiff testified that she had "memory lapses" and could "[n]ot always" track

25  a two-hour movie. (Dkt. No. 12 at 53.) The ALJ expressed that he felt "the claimant's subjective

26  complain[ts] and alleged limitations are not fully persuasive or consistent with her work history

ORDER ADOPTING REPORT AND
RECOMMENDATION
PAGE - 9

1   and the medical evidence, and she is therefore found to be not fully credible." (*Id.* at 29.)

2   Furthermore, while the ALJ found Plaintiff limited to unskilled and some semi-skilled work,

3   "[t]he ALJ declined to assess plaintiff as more severely limited in her functional abilities, noting

4   her daily activities suggest a high level of functioning." (Dkt. No. 22 at 10–11.) Judge Theiler

5   approved the ALJ's credibility determination and the low weight given to testimony that Plaintiff

6   has trouble tracking a two-hour movie. (*Id.*)

7        An "ALJ must make a credibility determination with findings sufficiently specific to

8   permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."

9   *Thomas*, 278 F.3d at 958. In assessing a claimaint's credibility, an ALJ is to use "ordinary

10   techniques of credibility evaluation" such as considering "if a claimant has a reputation as a liar,

11   or has made prior statements inconsistent with his claim of pain, or is found to have been less

12   than candid in other aspects of his testimony." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

13        In her objection, Plaintiff argues that while Judge Theiler "found various daily activities

14   as undercutting Plaintiff's credibility, . . . these did not contradict the inability to sustain attention

15   for 2 hour increments, the one dispositive piece of testimony for the world of work." (Dkt. No.

16   25 at 8.) The Commissioner on the other hand points out that "an ALJ need not offer reasons to

17   reject each element of a claimant's testimony; once an ALJ finds a claimant's testimony to be

18   unreliable, the ALJ may reject any part of that testimony." (Dkt. No. 25 at 5); *see Turner v.*

19   *Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010) (upholding ALJ's rejection of

20   claimant's mental complaints because of ALJ's findings that claimant exaggerated physical

21   complaints).

22        Here, Plaintiff's daily activities, her work history after the alleged onset date, and her

23   noncompliance with her medical treatment all reasonably suggest that "the claimant's functional

24   limitations are not as significant and limiting as alleged." (Dkt. 12 at 28–29.) Having provided

25   reasons for disbelieving the subjective testimony of the Plaintiff, the ALJ did not act arbitrarily

26   in rejecting Plaintiff's testimony regarding her memory issues.

ORDER ADOPTING REPORT AND
RECOMMENDATION
PAGE - 10

1    III.    **CONCLUSION**

2           For the foregoing reasons, the Court ADOPTS Judge Theiler's Report and

3    Recommendation and AFFIRMS the decision of the Commissioner. The Clerk shall provide

4    copies of this Order to all counsel and to Judge Theiler.

5           DATED this 12th day of November, 2013

6

7

8

9

10

11                                              John C. Coughenour
                                                UNITED STATES DISTRICT JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER ADOPTING REPORT AND
RECOMMENDATION
PAGE - 11